FILED

2022 Jan-11  PM 01:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **REGINALD MCCRAY, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:20-CV-01891-AKK** |
| | ) | |
| **MILAN SUPPLY CHAIN and** | ) | |
| **BOBBY LEE BURKE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the court is Milan Supply Chain's motion for partial summary judgment, in which Milan argues for dismissal of Reginald McCray's punitive damages and negligent entrustment claims following an automobile collision between McCray and Bobby Lee Burke, Milan's tractor-trailer driver. *See* doc. 10. McCray failed to respond to the motion. After review of the motion, the evidence, and the governing case law, the court concludes that no reasonable juror could find in favor of McCray on his claims for wantonness and negligent entrustment.

## I.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The movant bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings" and establish a "genuine issue for trial."  *See id*. at 324.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Anderson*, 477 U.S. at 255. Factual disputes are resolved in the nonmoving party's favor when sufficient competent evidence supports the nonmoving party's version of the facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

## II.

The collision at issue in this case occurred in October 2018, as McCray drove west on Highway 78 in Birmingham and Burke drove Milan's commercial tractor-trailer behind him.  *See* doc. 1-1 at 4.  After McCray stopped at a red light, Burke's

tractor-trailer rear-ended McCray's vehicle. *See id.*; doc. 10-4 at 3. According to the police report of Officer Christopher McClure, who responded to the accident, a vehicle had pulled in front of McCray before the light turned red, causing McCray to brake. *See* docs. 10-4 at 3 (citing the police report); 10-6 at 2. Burke told Officer McClure that "he couldn't stop fast enough" before hitting McCray. Doc. 10-6 at 2.[1] McCray suffered back injuries that required medical treatment. Doc. 1-1 at 5. This lawsuit followed, and Milan removed the case to federal court. *See* doc. 1.

According to Burke's 2017 employment application for Milan, Burke has worked on and off as a commercial driver since 1996. *See* doc. 10-8. In his application, Burke indicated that he had not had any accidents and had no violations on his driving record. *See id.* Before hiring Burke, Milan ran a "motor vehicle record" check on him that came back "clear." *See* doc. 10-5. Milan also had Burke perform a drug test, which came back negative; verified Burke's employment history; gave Burke a road test, which he passed; and provided Burke with "entry-level" driver training. *See* docs. 10-10; 10-11; 10-12. Burke held a valid commercial driver's license at the time of the accident, and his CDL remains valid. *See* doc. 10-5.

---

[1] *See also* doc. 10-7 (Milan's accident report) ("A cop was 2 vehicles ahead of [Burke]. The cop made a sudded [sic] right turn into a parking lot without using his turn signal. [McCray] in front of [Burke] was able to slam on his brakes and get stopped. [Burke] was not able to stop before rear-ending [McCray].").

### III.

McCray pleads negligence, negligence *per se*, and negligent entrustment claims against Milan and seeks compensatory and punitive damages as relief. *See* doc. 1-1. For its part, Milan argues that McCray cannot seek punitive damages because he does not allege wantonness, and if McCray does assert wantonness, no evidence of wantonness exists. Doc. 10-1 at 6. Milan also argues that McCray cannot prove that Milan negligently entrusted Burke. *Id.* at 13. The court addresses these contentions in turn.

### A.

Milan is correct that Alabama law requires evidence of wantonness—or oppression, fraud, or malice—for a plaintiff to recover punitive damages. *See id.* at 6–7; ALA. CODE § 6-11-20(a).[2] Thus, without evidence of wantonness, McCray cannot recover punitive damages. However, the court disagrees with Milan that McCray fails to plead wantonness. To be sure, McCray's complaint asserts three counts, labelled "Negligence," "Negligence *Per Se*," and "Negligent Entrustment,"; McCray does not specifically separate his claim for wantonness. *See* doc. 1-1. But

---

[2] "Punitive damages may not be awarded in any civil action, . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." ALA. CODE § 6-11-20(a). *See also CP & B Enterprises, Inc. v Mellert*, 762 So. 2d 356, 362 (Ala. 2000) (holding that a finding of negligence "would not warrant an award of punitive damages") (citing *Bradley v. Walker*, 93 So. 634, 635 (Ala. 1922)); *Bradley*, 93 So. at 635 ("Punitive damages are not recoverable for simple negligence, but the recovery in such case is for compensatory damages.").

his factual allegations express as much: McCray pleads that Burke operated the tractor-trailer "in such a negligent, reckless, *and/or wanton* manner."  *See id.* at 4 (emphasis added).  Though McCray could have pleaded his claims with more clarity, the court understands him to allege negligence and/or wantonness against Burke and Milan in support of his claim for punitive damages.  Thus, the question is whether a reasonable jury could return a verdict for McCray on his wantonness claim.  *See Anderson*, 477 U.S. at 248.

Here, however, the complaint and the evidence fall short.  In Alabama, wantonness refers to "the conscious doing of some act or omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *McMahon v. Yamaha Motor Corp., USA*, 95 So. 3d 769, 773 (Ala. 2012); *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007).  Though wantonness requires a conscious act, "the actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference."  *Hicks v. Dunn*, 819 So. 2d 22, 24 (Ala. 2001) (quoting *Scott v. Villegas*, 723 So. 2d 642, 643 (Ala. 1998)).  In the context of automobile accidents, the negligent failure to exercise "good judgment" while driving does not mean that the driver's conduct constitutes "reckless indifference to a known danger to inflict

injury." *Cheshire*, 54 So. 3d at 344; *Essary*, 992 So. 2d at 12.[3]  *See also George v. Champion Ins. Co.*, 591 So. 2d 852, 854 (Ala. 1991).[4]  Rather, wantonness depends on the circumstances of each case, *Cheshire v. Putman*, 54 So. 3d 336, 342 (Ala. 2010) (quoting *Ex parte Anderson*, 682 So. 2d 467 (Ala. 1996)), and speeding alone is insufficient unless coupled with other factors, *Hicks*, 819 So. 2d at 24.[5]

In this case, even in the light most favorable to McCray, the evidence would not lead a reasonable jury to find wantonness.  The evidence demonstrates that prior to the collision, a vehicle somewhat abruptly pulled in front of McCray, who applied his brakes.  *See* docs. 10-1 at 2; 10-6 at 2; 10-7 at 2.  It appears that as McCray slowed to accommodate the car in front of him, the traffic light also turned red, forcing him to come to a complete stop.  *See id.*  Burke, traveling behind McCray,

---

[3] In *Essary*, the Supreme Court of Alabama held that a driver's rolling stop at an intersection requiring him to yield was not wanton, even though the driver "knowingly entered the intersection" to try to cross it.  992 So. 2d at 7, 12.  The Court noted that although the plaintiffs characterized the driver's "attempt to cross the intersection between two vehicles" as "'accelerating' after a 'rolling stop' to 'shoot the gap,'" in reality the driver "made an error in judgment when he attempted to 'beat the traffic.'"  *Id.* at 12.

[4] In *George*, the Supreme Court of Alabama held that there was insufficient evidence of wantonness where the driver approached an intersection at a green light, glanced back at the occupants in the rear seat, looked forward again, saw the light was red, and drove into another vehicle when her foot missed the brake pedal.  591 So. 2d at 854.  The Court concluded that although the facts "show[ed] inadvertence on the part of the driver, they [did] not amount to wantonness, which requires some degree of conscious culpability."  *Id.*

[5] In *Hicks*, the Supreme Court of Alabama held that the trial court should have presented a wantonness claim to the jury because evidence showed that the driver was driving "much faster than the posted speed limit" and "was not paying attention to the road."  819 So. 2d at 25.  In addition, the Court noted that the driver did not slow his speed despite constructions signs and the driver's knowledge "that a restaurant into which patrons would likely be turning was on the other side of the hill he was cresting, obscured from his view."  *Id.*

could not stop in time, and Burke's tractor-trailer rear-ended McCray's vehicle. *See id.* Although Milan's accident report lists "[d]istracted [d]riving" as a factor in the accident, doc. 10-7, and McCray appears to allege that Burke followed his vehicle too closely, doc. 1-1 at 6, McCray has not established that Burke was speeding or behaved with "reckless indifference to a known danger to inflict injury," *Cheshire*, 54 So. 3d at 344; *Essary*, 992 So. 2d at 12. Perhaps Burke made an error in judgment. But because McCray cannot establish wantonness, his claim—as well as his request for punitive damages—cannot proceed.

## B.

Milan also contends that McCray cannot satisfy the elements of negligent entrustment. *See* doc. 10-1 at 16–17. "The essential ingredients of a cause of action for negligent entrustment are: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." *Prill v. Marrone*, 23 So. 3d 1, 8 (Ala. 2009) (quoting *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 419 (Ala. 2005)). Milan asserts that McCray cannot demonstrate Burke's incompetence, doc. 10-1 at 16–17; and that regardless, McCray cannot show Milan knew of Burke's alleged incompetence, *id.* at 17–18. The court agrees.

## 1.

Milan contends that the evidence, even viewed in the light most favorable to McCray, does not show that Burke was an incompetent driver. Under Alabama law,

"the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle," and a driver need not have a perfect or near-perfect record to establish competence. *See Halford*, 921 So. 2d at 417.[6]  In this case, the evidence demonstrates that although Burke had several citations for certain inspection violations, he did not have a history of accidents involving personal injuries.  *See* docs. 10-8 (listing "[n]o accidents"); 10-13 (listing, for example, violations for "[d]riving beyond 8 hour limit" and "[i]noperable head lamps"). Burke also held a valid CDL at the time of the accident and received entry-level driver training and passed a road test the year prior.  *See* docs. 10-5; 10-11; 10-12. On this evidence, McCray has not met his burden of establishing Burke's incompetence.

2.

Milan also argues that even if Burke was incompetent, Milan had no knowledge of his incompetence.  *See* doc. 10-1 at 17–18.  To survive summary

---

[6] *Compare id.* (holding that the suspension of a driver's license after the driver failed to appear in court for a "nonmoving" offense did not establish incompetence) *and Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 52 (Ala. 1995) (holding that the plaintiff failed to present substantial evidence of incompetence even where the driver had two prior speeding tickets and a suspended prosecution of a DUI charge over a 10-year period) *with Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985) (holding that evidence of a driver's lack of a license and three-time failure of her driver's test prior to the accident, "although not conclusive, was probative of her possible inexperience and lack of skill") *and Edwards v. Valentine*, 926 So. 2d 315, 324 (Ala. 2005) (holding that where a driver had "tr[ied] for two years" to reacquire his license, had three instances of driving under the influence, and had a prior accident in which he "broadsided" someone, the trial court's finding of incompetency was not "palpably erroneous or manifestly unjust").

8

judgment on his negligent entrustment claim, McCray must establish "that [Milan] knew, or by the exercise of reasonable care, would have known that [Burke] was incompetent." *Dunaway v. King*, 510 So. 2d 543, 546 (Ala. 1987); *Hobbs v. U.S. Xpress, Inc.*, No. 7:18-cv-02129-LSC, 2021 WL 9133898, at *4 (N.D. Ala. Mar. 10, 2021).[7]   Viewed in the light most favorable to McCray, the evidence does not demonstrate that Milan knew or should have known of Burke's alleged incompetence.   For one, Milan screened Burke's past employment, reviewed his accident and violation histories, and ensured he held a valid CDL prior to hiring him. *See* docs. 10-5; 10-8.   In addition, Milan obtained Burke's medical examiner's certificate and had him undergo entry-level driver training, a road test, and a drug test in July 2017.   *See* docs. 10-9; 10-10; 10-11; 10-12.   On these facts, McCray cannot meet his burden of establishing that Milan knew or should have known of Burke's purported incompetency.   No reasonable juror could therefore find for McCray on his negligent entrustment claim, and Milan's motion is due to be granted as to this claim.

---

[7] In *Day v. Williams*, the Supreme Court of Alabama determined that there was no evidence the defendant had reason to believe the entrustee was an incompetent driver.  670 So. 2d 914, 916 (Ala. 1995).  The Court reasoned that the defendant's testimony "demonstrate[d] that he was unaware that [the entrustee] did not possess a driver's license," and that, even if the defendant had been aware of this fact, "that alone would not [have] support[ed] a finding of negligent entrustment, under the circumstances of this case."  *Id.*  The Court noted that "[t]he record indicate[d] that [the entrustee] was an experienced adult driver and had exhibited no indication that he was an incompetent driver," despite previous tickets for driving without a license and one speeding citation.  *See id.*

## IV.

To close, Milan's motion for partial summary judgment, doc. 10, is due to be granted, and McCray's wantonness or punitive damages and negligent entrustment claims are due to be dismissed with prejudice.  In addition, because McCray failed to serve Burke, who is also a defendant, within 90 days of Milan's removal, *see* doc. 10 at 2 n.1, and the period for discovery has expired, *see* doc. 6 at 1, Burke is due to be dismissed unless McCray can show good cause for his failure.[8]  The court will effectuate this opinion by separate order.

**DONE** the 11th day of January, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[8] *See* 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which any one . . . of the defendants has not been served with process . . . such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."); FED. R. CIV. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.").